NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES PANELLA, | : |
| Plaintiff, | : Civ. Action No. 17-cv-6487-BRM-LHG |
| v. | : |
|  | : **OPINION** |
| UNITED STATES, *et al.*, | : |
| Defendants. | : |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant United States ("Defendant") Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) and Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) Plaintiff James Panella ("Plaintiff") opposes these motions. (ECF No. 15.) Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion to Transfer Venue is **GRANTED** and their Motion to Dismiss is **ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE**.

I. **FACTUAL BACKGROUND**

Plaintiff is a citizen of New Jersey who, "for decades," has been traveling with his family to Britt, Ontario, Canada to spend time at a family cottage. (Compl. (ECF No. 12) ¶¶ 3 & 9.) On August 20, 2015, Plaintiff and his son were returning home from such a trip when they were stopped by U.S Customs and Border Protection ("CBP") Officers ("Officers") employed by the

United States at the Lewiston-Queenston Bridge in Lewiston, near Buffalo, New York. (ECF No. 12) ¶¶ 11-12.) One of the Officers, presently unidentified, asked Plaintiff if he had any fresh fish in his vehicle or trailered boat. (ECF No. 12 ¶ 13.) Despite Plaintiff's denials, the Officers "continued to harass Plaintiff by repeatedly asking the one question – whether he had any fresh fish." (ECF No. 12 ¶ 15.) Plaintiff then assisted the Officers in searching Plaintiff's truck and boat. (ECF No. 12 ¶ 16.) Despite the fruitless search, the Officers next asked Plaintiff to turn off his vehicle, exit his vehicle, hand over his keys, and to proceed to the front of the vehicle. (ECF No. 12 ¶¶ 17-19.)

Plaintiff then asked whether this intensive inquiry was necessary – to which the Officer who took the vehicle keys "proceeded to push Plaintiff, jumped on his back and began to choke Plaintiff with a chokehold that compressed Plaintiff's windpipe with such force that Plaintiff was unable to breathe." (ECF No. 12 ¶ 20.) Both men fell to the ground where additional unidentified Officers handcuffed Plaintiff. (ECF No. 12 ¶¶ 21-22.)

Plaintiff sustained injuries "including, but not limited to, cuts, bruises, and extreme pain in his right shoulder, knee, neck and throat." (ECF No. 12 ¶ 23.) Plaintiff's son was also subject to physical and verbal abuse. (ECF No. 12 ¶¶ 24-27.) Both Plaintiff and his son were taken into custody without being read Miranda rights or having their charges explained to them. (ECF No. 12 ¶ 25.) Plaintiff was transported to Mount St. Mary Hospital in Lewiston, New York. (ECF No. 12 ¶ 32.)

After several hours of diagnostic testing and medical treatment, both Plaintiff and his son were discharged from the hospital and transported back to the U.S. Customs and Border protection facility. (*Id*.) They were then brought to their vehicles and permitted to leave. (*Id*.) Plaintiff underwent continued medical treatment in New Jersey and continues to suffer from "substantial

pain and physical limitations related to his shoulder injury" which has negatively affected his life. (ECF No. 12 ¶ 37.)

Plaintiff brought this action in the District of New Jersey. (ECF No. 1.) Defendants moved to dismiss and to transfer to the Western District of New York (ECF No. 14), which Plaintiff opposes. (ECF No. 15.)

## II. LEGAL STANDARD

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

3

The Court must consider three factors when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id*. at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879-80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879).

The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id*. (citing *Jumara*, 55 F.3d at 879-80).

**III. DECISION**

As an initial matter, this case can only be transferred "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Therefore, the transferee court must have personal jurisdiction over Defendants under 28 U.S.C. § 1391. For the purpose of the statute, a substantial part of the events giving rise to this claim arose in Lewiston, New York. Neither party disputes this fact. Therefore, the matter could have been originally filed in the Western District of New York, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Accordingly, the Court may proceed with its analysis of the private and public interest factors.

**A. Private Interest Factors**

**i. Plaintiff's forum preference**

The parties' preferences in this action fundamentally compete, and both sides have indicated their preference for their most convenient state through their filings. Defendants move to transfer the action to the Western District of New York. The parties dispute how much weight should be given to Plaintiff's preference. Defendants argue a plaintiff's preference is given "'substantially less weight' if the events underlying the suit occurred in another district." (ECF No. 18 at 7 (citing *Janosko v. United of Omaha Life Insurance Company*, No. 16-1137 (RBK/KMW), 2016 WL 4009818, at *3 (D.N.J. July 25, 2016); *see also Diaz-Lebel v. TD Bank USA, N.A.*, No. 17-1611 (JBS/AMD), 2017 WL 5451747, at *3 (D.N.J. Nov. 14, 2017) (noting "the deference given to a 'choice of forum is reduced when the operative facts that give rise to the action occur in another district'") (citation omitted); *Doe v. Dartmouth College*, No. 16-7909 (JLL), 2017 WL 2771508, at *2 (D.N.J. Jun. 26, 2017) (noting "when the dispute central to a lawsuit arose from events that occurred almost exclusively in another state, as is the case here, courts give

5

substantially less weight to the plaintiff's forum choice") (citation omitted); *Hameed v. AMC Network Entertainment LLC*, No. 15-6427 (JLL), 2017 WL 1658820, at *2 (D.N.J. May 1, 2017) (same). Defendants argue that, because this suit arises from events that occurred in New York, the Court should not defer to Plaintiff's preference to bring this case in New Jersey. (*Id.* at 7-8.)

Conversely, Plaintiff argues a transfer motion ought not be "liberally granted . . . [u]nless the balance of convenience of the parties is strongly in favor of defendant." (ECF No. 15 at 34 (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).)

### ii. Defendants' preference and convenience of the parties and witnesses

Defendants prefer the action be litigated in New York, where the events giving rise to this claim took place, likewise arguing that this will be more convenient for the parties and their witnesses. (ECF No. 18 at 7-9). ("[R]equiring a large number of federal employees to travel to New Jersey would create a substantial burden on the Government and limit CBP's ability to carry out its mission.").

Plaintiff raises three primary counterarguments in regard to burden. First, and without reference to any authority, Plaintiff argues that the asymmetry of resources in favor of Defendant, the Government, cuts against the justice of transfer. (ECF No. 15 at 34-35.) Second, Plaintiff casts doubt upon Defendants' claims of hardship, suggesting depositions could be taken remotely, taken *de bene esse*, or that Plaintiff's counsel could travel to Buffalo in compelling circumstances. (ECF No. 15 at 35.) Finally, Plaintiff argues that, if the case were transferred, "issues as to [his lawyer's] professional licensing and ability to try a case in Buffalo may preclude [counsel from] participat[ing] . . . thus infringing on Plaintiff's constitutional right to counsel by choice." (ECF No. 15 at 39).

### iii. Whether the claim arose elsewhere and location books and records

Neither party disputes that the events giving rise to this claim arose in Lewiston, New York. Plaintiff argues, however, the physical location of the documents has been "significantly reduced" in the electronic age. (ECF No. 15 at 39 (quoting *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003)).)

### B. Public Interest Factors

#### i. Enforceability of the judgement

The parties do not dispute this factor is neutral.

#### ii. Practical considerations

Defendants note that a large number of federal employees would need to travel to New Jersey in order to litigate the case there, creating a substantial burden on the Government and taxpayers." (ECF No. 14-3 at 18.) Plaintiff argues the burden to the Government is equivalent whether the case is litigated in New York or New Jersey because the Government has field offices in New Jersey. (ECF No. 15 at 39.)

#### iii. Relative administrative difficulty resulting from court congestion

Plaintiff does not challenge Defendants' position that this factor is neutral. (ECF No. 14-3 at 20 n.2 (citing *Janosko*, 2016 WL 4009818, at *6 (recognizing that all federal courts have similar burdens)).)

#### iv. Public policy and local interest in deciding local controversies

Defendants claim New York's strong interest in deciding controversies involving the port of entry where the events here occurred. (ECF No. 14-3 at 19). In response, Plaintiff makes a creative but ultimately inapposite and redundant argument about the convenience of the parties and witnesses.

### v. Familiarity of the trial judge with the applicable state law

Finally, Defendants note that judges in the Western District of New York have strong fluency in New York's tort law, which undergird Plaintiff's claims. (ECF No. 14-3 at 20.) Conversely, Plaintiff notes that "familiarity with state law is not given great weight, particularly when the applicable state law appears clear." (ECF No. 15 at 40 (quoting Wright, Miller, & Copper, Federal Practice and Procedure § 3854, at 266-267 (2d ed. 1986). Moreover, Plaintiff has "great confidence" in this Court's ability to "master and apply" New York tort law. (ECF No. 15 at 40.)

### C. Consideration of Factors

Defendants have met their burden to show a transfer to the Western District of New York is warranted. Taking all relevant practical interests into consideration, the Court is persuaded by the overwhelming gravity of events having taken place and witnesses' location in New York. Warrant the matter being transferred to the Western District of New York. First, this Court does not recognize inconvenience to Plaintiff's counsel as a consideration as to the issue of proper venue. *Barbosa v. McGorman*, No. 12-6772, 2013 WL 5614015, at *2 (D.N.J. Mar. 13, 2013). Additionally, as Defendants point out, counsel could pursue this case in the Western District of New York, as that court allows an attorney admitted to practice before an out-of-state district court to apply for both permanent and *pro hac vice* admission. (ECF No. 18 at 8-9 (citing Western District of New York L. Civ. R. 83(b)(2), (c)). Plaintiff's arguments around asymmetries of resources are unsupported by case law. And his suggestion to conduct depositions remotely is of no moment.

Regarding public factors, New York's strong interest in adjudicating disputes transpiring within its own borders must be respected. In addition, once New York federal courts' familiarity with New York tort law is considered, the decision for Defendants becomes a clear one.

Taking into account the private and public interest factors and the interests of justice, *Liggett Grp.*, Inc., 102 F. Supp. 2d at 526 (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879), the Court finds Defendants met their burden in demonstrating the motion should be transferred to the Western District of New York. Accordingly, the **Motion to Transfer** is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' **Motion to Transfer** is **GRANTED**. Accordingly, Defendants' **Motion to Dismiss** is **ADMINISTRATIVELY TERMINATED WITHOUT PREJUDICE** and may be refiled in the Western District of New York if appropriate. An order will follow.

**Date:** October 31, 2018
　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brian R. Martinotti*
　　　　　　　　　　　　　　　　　　　　　　　　　**HON. BRIAN R. MARTINOTTI**
　　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**