UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES PANELLA,

                            Plaintiff,

              v.

UNITED STATES,

                            Defendant.

_____

|  |  |  |
|---|---|---|
|  |  | REPORT |
|  |  | and |
|  |  | RECOMMENDATION |
|  |  |  |
|  |  | 18-CV-1220-JLS-LGF |

APPEARANCES:        ROTOLO KARCH LAW
                              Attorney for Plaintiff
                              E. CARR CORNOG, III
                              VICTOR A. ROTOLO, of Counsel
                              502 U.S. Route 22 West
                              Lebanon, New Jersey 08833

                              MICHAEL DIGIACOMO
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              MICHAEL S. CERRONE
                              Assistant United States Attorney
                              Federal Center
                              138 Delaware Avenue
                              Buffalo, New York 14202

## **JURISDICTION**

This case was referred to the undersigned by the Honorable John L. Sinatra, Jr. on April 8, 2019, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  (Dkt. 26).  The matter is presently before the court on Defendant's motion for partial summary judgment (Dkt. 98), filed on March 27, 2024, and Plaintiff's cross-motion for judicial estoppel (Dkt. 107), filed July 29, 2024.

## BACKGROUND

On August 28, 2017, Plaintiff James Panella ("Plaintiff") filed this action in the United States District Court for the District of New Jersey against the United States, the U.S. Department of Homeland Security ("DHS"), the U.S. Customs and Border Patrol ("CBP"), CBP Officer Orlando Cruz ("Officer Cruz"), CPB Officers John Does 1-10 ("Officer John Does 1-10"), and CPB Officers John Does 11-20 ("Officer John Does 11-20") (together, "Defendants"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, seeking to recover for injuries Plaintiff allegedly sustained during a customs inspection on August 30, 2015, at the Lewiston-Queenston Bridge ("Lewiston-Queenston Bridge") between the United States and Canada.  On March 19, 2018, Plaintiff filed an amended complaint ("Amended Complaint"), dropping the claims against DHS, CBP, Officer Cruz, Officers John Does 1-10, and Officers John Does 11-20, leaving only the United States as Defendant.  Specifically, Plaintiff alleges claims for common law battery, excessive force, assault, false arrest and false imprisonment, intentional infliction of emotional distress, breach of duty of care to confined persons, general negligence, negligent infliction of emotional distress, negligent supervision, negligent hiring and retention, and negligent training.  *See* Amended Complaint at ¶¶ 41-109.  Defendant United States ("Defendant") thereafter sought a transfer of venue to this court pursuant to 28 U.S.C. § 1404(a) ("§ 1404(a)"), and that request was granted on October 31, 2018.

On March 27, 2024, Defendant filed the instant motion for partial summary judgment (Dkt. 98) ("Defendant's Motion"), attaching the Declaration of Michael S. Cerrone, Esq. (Dkt. 98-1) ("Cerrone Declaration"), with exhibits A through R (Dkts. 98-2

through 98-19) ("Defendant's Exh(s). __"), the declaration of David S. Provenzo (Dkt. 98-20) ("Provenzo Declaration"), the declaration of Lucas B. Langworthy (Dkt. 98-21) ("Langworthy Declaration"), a Statement of Undisputed Facts (Dkt. 98-22) ("Defendant's Statement of Facts"), and a Memorandum of Law (Dkt. 98-23) ("Defendant's Memorandum").  Defendant seeks summary judgment on all of Plaintiff's claims, except Plaintiff's common law assault and battery claims.  *See* Defendant's Memorandum at 1 n.1.

In opposition to Defendant's Motion, Plaintiff filed on July 29, 2024, the Declaration of E. Carr Cornog, III, Esq. (Dkt. 106-2) ("Cornog Declaration"), attaching exhibits 1 through 13 (Dkts. 106-3 through 106-13) ("Plaintiff's Exh(s). __"), an Opposing Statement of Facts with Additional Facts (Dkt. 106) ("Plaintiff's Statement of Facts"), and a Brief in Opposition of Defendant USA's Motion for Partial Summary Judgment (Dkt. 106-1) ("Plaintiff's Brief").  Plaintiff also filed on July 29, 2024, a Cross-Motion for Judicial Estoppel (Dkt. 107) ("Plaintiff's Cross-Motion").

On September 25, 2024, Defendant filed a reply to Plaintiff's Brief and Plaintiff's Cross-Motion (Dkt. 113) ("Defendant's Reply"), attaching the Reply Declaration of Michael S. Cerrone, Esq. (Dkt. 113-1) ("Cerrone Reply Declaration"), with exhibit S (Dkt. 113-2).  Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED; Plaintiff's Cross-Motion should be DENIED.

## **FACTS**[1]

On August 30, 2015, Plaintiff and Plaintiff's teenage son were returning home to Asbury, New Jersey, after vacationing at a family cottage in Britt, Ontario, Canada.  At the international border between Canada and the United States, Plaintiff and Plaintiff's son crossed the Lewiston-Queenston Bridge and presented themselves and their vehicle for inspection at approximately 5:48 p.m. at the United States port of entry.  Upon arrival at the port of entry, Plaintiff drove up to Inspection Lane #6 ("Lane #6").  U.S. Customs and Border Inspection ("CBP") Officer Faijul Mowla ("Officer Mowla") was assigned to Lane #6 at that time.

Officer Mowla asked Plaintiff what Plaintiff had been doing in Canada, and Plaintiff replied that he had been fishing.  Plaintiff also was towing a fishing boat, so Officer Mowla asked Plaintiff whether Plaintiff was bringing any fresh fish from Canada into the United States.  Plaintiff responded that he was not.  Officer Mowla repeated this line of questioning several times before exiting his booth at Lane #6 to perform a cursory inspection of Plaintiff's boat.  During that inspection, Officer Mowla looked underneath the cover of Plaintiff's boat but apparently did not see anything to raise an importation question.  Officer Mowla then returned to his booth.

Shortly thereafter, Officer Mowla exited his booth again to inspect Plaintiff's truck.  Officer Mowla opened the rear tailgate of the truck and observed a large cooler in the truck bed.  Officer Mowla could not immediately access the cooler or its contents because Plaintiff had a cover over the truck bed.  Officer Mowla twice attempted to open the cover but failed on both attempts.  At that point, Officer Mowla asked Plaintiff for

---

[1] Taken from the pleadings and motion papers filed in this action.

assistance with the cover, and Plaintiff complied with Officer Mowla's request.  Officer Mowla then asked Plaintiff to open the cooler, and Plaintiff again complied.  Officer Mowla observed fish inside the cooler, and Plaintiff explained that the fish were store bought and wrapped salmon.  Officer Mowla also observed a large container in the truck bed, which Plaintiff asserted was a dog food container, as well as an additional boat cover, which Plaintiff said was not in use because the cover was not suitable for highway speeds.

Officer Mowla did not further investigate the contents of the truck bed and instructed Plaintiff to close the cooler and replace the cover over the truck bed.  Plaintiff complied with both directives and reentered the vehicle.  Officer Mowla then informed Plaintiff that Plaintiff was being sent to secondary inspection and radioed for assistance escorting Plaintiff to the secondary inspection site.  Several CBP officers responded to Officer Mowla's request, including CBP Officer William Burbas ("Officer Burbas"), who asked Plaintiff to exit the truck and to give him the keys.  Plaintiff complied and exited the truck, and Plaintiff's son exited the truck as well.

Plaintiff, Plaintiff's son, and the CBP officers then began walking toward the secondary inspection site, but while doing so, Plaintiff and Officer Burbas started exchanging words about whether it was really necessary for Plaintiff to go to secondary inspection.  In response to this exchange, CBP Officer Christopher Marra ("Officer Marra") grabbed Plaintiff's right arm to secure Plaintiff with handcuffs, and Officer Burbas grabbed Plaintiff from behind.  Plaintiff, Officer Marra, and Officer Burbas then tumbled backwards into a concrete divider and fell to the ground.  Supervisory CBP Officer Orlando Cruz-Vega ("Officer Cruz-Vega") asked Plaintiff "to comply," and two

5

minutes later, the CBP officers stood Plaintiff up and escorted Plaintiff to the administration building.

Inside the administration building, Plaintiff was handcuffed and taken to an interview room.  In the interview room, Officer Cruz-Vega offered Plaintiff medical treatment, and around twenty minutes later, Plaintiff was escorted back to the lobby of the administration building.  Thirty-six minutes later, at approximately 6:57 p.m., Plaintiff and Plaintiff's son were taken for treatment at a local hospital and subsequently released a few hours later.

## DISCUSSION

**1.    Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the non-moving party must, to defeat summary judgment, come forward with evidence that would be sufficient to

support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the non-moving party's affidavit are insufficient to defeat a properly supported summary judgment motion.  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (non-movant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts"); *Reisner v. General Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) (disregarding non-movant's self-serving affirmations contradicting prior assertions in depositions, interrogatories, and affidavits). "The non-moving party may not rely on conclusory assertions or unsubstantiated speculation [to defeat summary judgment]."[2]  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Rather, "the non-movant must produce specific facts indicating that a genuine factual issue exists."  *Wright v. Coughlin*, 132 F.3d 133, 317 (2d Cir. 1998). The ultimate inquiry on a summary judgment motion is whether any reasonable jury could find the plaintiff's evidence meets the requisite burden of proof.  *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir. 2004).

2.      **FTCA**

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012).  "Subject to certain exceptions, the FTCA waives the sovereign immunity of the United States against

---

[2] Unless otherwise indicated, bracketed material has been added.

claims for property damage or personal injury 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his officer or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016) (internal citation omitted) (quoting 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674.  "Accordingly, for liability to arise under the FTCA, a plaintiff's cause of action must be comparable to a cause of action against a private citizen recognized in the jurisdiction where the tort occurred."  *McGowan*, 825 F.3d at 125 (internal quotation marks and citation omitted).  "This private analogue requirement asks whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred."  *Id.* (internal quotation marks and citation omitted); *see also Rayonier Inc. v. United States*, 352 U.S. 315, 319 (1957).

Further, "[i]n 1974, Congress carved out an exception to [the FTCA's] preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers."  *Millbrook v. United States*, 569 U.S. 50, 52 (2013); *see also Liranzo*, 690 F.3d at 85.  "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity for six intentional torts, including assault and battery, [as well as false imprisonment and false arrest], that are based on the 'acts or omissions of investigative or law enforcement officers.'"  *Millbrook*, 569 U.S. at 52-53 (quoting 28 U.S.C. § 2680(h)).  "The proviso defines 'investigative or law enforcement officer' to mean 'any officer of the United States who is empowered by law to execute searches,

to seize evidence, or to make arrests for violations of Federal law.'" *Id.* at 53 (quoting

28 U.S.C. § 2680(h)).  Thus, the United States may be held liable under the FTCA for

intentional torts committed by CPB officers acting within the scope of their employment.

*See, e.g.*, *Yan Zhao v. United States*, 273 F. Supp. 3d 372, 395 (W.D.N.Y. 2017)

("Here, the Government has not disputed, nor could it reasonably dispute, that [a CBP

officer] was acting within the scope of his employment during his interactions with

Plaintiff.").

    Under the FTCA, courts apply "the law of the place where the act or omission

occurred."  28 U.S.C. § 1346(b).  More specifically, "the FTCA directs courts to consult

state law to determine whether the government is liable for the torts of its employees."

*Liranzo*, 690 F.3d at 86; *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law

of the State [is] the source of substantive liability under the FTCA.").  Accordingly, New

York substantive law applies in this case.  *See, e.g.*, *Rhodes v. United States*, 519 F.

App'x 703, 705 (2d Cir. 2013) (New York substantive law applied to claims brought

under the FTCA concerning an incident involving CBP officers "at the Port of Buffalo

entry to the United States").

### 3.    False Arrest and False Imprisonment

    In addition to claims for assault and battery, Plaintiff asserts claims for common

law false arrest and false imprisonment.  Amended Complaint (Dkt. 12) at ¶¶ 57-65.

Defendant argues that it is entitled to summary judgment on those claims because there

is no genuine issue of material fact that Plaintiff's confinement, *i.e.,* being sent to

secondary inspection, was privileged under the federal border search doctrine.  *See*

Defendant's Memorandum (Dkt. 98-23) at 2-10 (collecting cases).

Under the FTCA, courts apply "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  More specifically, "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo*, 690 F.3d at 86; *see also FDIC v. Meyer*, 510 U.S. 471, 478 (1994) ("[The] law of the State [is] the source of substantive liability under the FTCA.").  Accordingly, New York substantive law applies in this case.  *See, e.g.*, *Rhodes v. United States*, 519 F. App'x 703, 705 (2d Cir. 2013) (New York substantive law applied to claims brought under the FTCA concerning an incident involving CBP officers "at the Port of Buffalo entry to the United States").

"The common law tort of false arrest is a species of false imprisonment, an action 'derived from the ancient common-law trespass that protects the personal interest of freedom from restraint of movement.'"  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (brackets omitted) (quoting *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975)); *see also Rhodes*, 519 F. App'x at 705 ("Under New York law, there is no distinction between false arrest and false imprisonment.").  Under New York law, "the elements of a false arrest and a false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (internal quotation marks and citation omitted).  Further, "[f]or purposes of the privilege element of a false arrest and false imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause."  *Id.* (internal quotation marks omitted) (quoting *De Lourdes Torres v. Jones*, 47 N.E.3d 747, 760

(N.Y. 2016)).  "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution in the belief that the person to be [confined] has committed or is committing a crime."  *Id.* (internal quotation marks and citation omitted).

In the context of immigration and border-search cases, however, whether a confinement is privileged is "judged under federal standards."  *See, e.g.*, *Liranzo*, 690 F.3d at 95 (explaining that "whether the [U.S. Immigration and Customs Enforcement] agents' actions . . . were 'otherwise privileged' is determined by consulting federal privileges applicable to federal immigration officers."); *Morales v. United States*, 2023 WL 2129580, at *4 (E.D.N.Y. Feb. 17, 2023) (applying the federal border search doctrine to New York false arrest and false imprisonment claims brought under the FTCA); *see also Caban v. United States*, 728 F.2d 68, 72 (2d Cir. 1984) (acknowledging that the FTCA requires courts to "look to whatever law, including federal law, the state courts would apply in like circumstances involving a private defendant.").  Under the federal border search doctrine, "the government has broad powers to conduct searches at the border even where . . . there is no reasonable suspicion that the prospective entrant has committed a crime."  *Tabbaa v. Chertoff*, 509 F.3d 89, 97 (2d Cir. 2007) (collecting cases); *see also United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985) ("Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant . . . .").  As such, "a suspicionless search [and related confinement] at the border is permissible . . . so long as it is considered to be routine."  *Tabbaa*, 509 F.3d at 98 (internal quotation marks and citation omitted).

Whether a border search is routine depends on "the level of intrusion into a person's privacy." *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006). "Routine searches include those searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights." *Id.* at 123. Additionally, "[s]econdary searches following initial Customs inspection are, like the initial inspection, valid border searches which, if routine, do not require reasonable suspicion." *Id.* at 124. Further, "border crossers cannot, by their own non-compliance, turn an otherwise routine search into a non-routine one." *Tabbaa*, 509 F.3d at 100.

Here, Plaintiff seeks to create a genuine issue of material fact regarding the confinement privilege by asserting that Officer Mowla unreasonably feared Plaintiff. *See* Plaintiff's Brief (Dkt. 106-1) at 9. However, whether Plaintiff's confinement was privileged depends on the routineness of the search, not Officer Mowla's subjective beliefs about Plaintiff. *See Tabbaa*, 509 F.3d at 98-100 (explaining that "the decisive factor in the [routine border search] analysis is invasiveness of privacy"). In the current case, Plaintiff's confinement lasted a little over an hour, *see* Defendant's Statement of Facts (Dkt. 98-22) at ¶¶ 158-59; Plaintiff's Statement of Facts (Dkt. 106) at ¶¶ 158-59, and Plaintiff does not allege that any CBP officer performed an invasive search of Plaintiff's person or vehicle, *see generally* Amended Complaint (Dkt. 12) at ¶¶ 9-40. Additionally, neither Officer Mowla's directing Plaintiff to secondary inspection nor Officer Burbas and Officer Marra's use of force on Plaintiff rendered the search non-routine. *See, e.g.*, *Borowski v. Mordino*, 2017 WL 9517688, at *4 (W.D.N.Y. July 21, 2017) (concluding that "[t]he stop and detention the plaintiff complains of here were

'routine' because the plaintiff was detained for no more than three hours and did not have her personal privacy unduly intruded upon during this time, as she does not allege that she was subjected to any time of invasive search or examination during her detention.").  Defendant therefore is entitled to summary judgment on Plaintiff's common law false arrest and false imprisonment claims.

**4.    Negligence**

Plaintiff also asserts, and Defendant's Motion attacks, claims for common law negligence under several theories: (1) breach of duty of care to confined persons, (2) general negligence, (3) negligent infliction of emotional distress, (4) negligent supervision, (5) negligent hiring and/or retention, and (6) negligent training.  *See* Amended Complaint (Dkt. 12) at ¶¶ 45-56.  Defendant argues that summary judgment is appropriate because Plaintiff's common law negligence claims are precluded by Plaintiff's assault and battery claims.  *See* Defendant's Memorandum (Dkt. 98-23) at 10-15 (collecting cases).

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002); *see also Merino v. N.Y.C. Transit Auth.*, 639 N.Y.S.2d 784, 787 (1st Dep't 1996). "[W]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."  *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 441 (W.D.N.Y. 2018) (alterations, internal quotation marks, and citation omitted) (collecting cases); *see also Mazurkiewicz v. N.Y.C. Transit Auth.*, 810 F. Supp. 563, 570-71 (S.D.N.Y. 1993)

("Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff.").  This is because New York does not recognize a "cause of action for negligent touching—that is 'negligent assault' or 'negligent battery.'" *Voccia v. United States*, 2017 WL 1194652, at *8 (E.D.N.Y. Mar. 31, 2017) (collecting cases); *see, e.g.*, *Schetzen v. Robotsis*, 709 N.Y.S.2d 193, 194 (2d Dep't 2000) ("It is well settled that no cause of action to recover damages for negligent assault exists in New York because once intentional offensive contact has been established, the actor is liable for assault and not negligence." (internal quotation marks and internal citations omitted)).

In this case, Plaintiff alleges that Officer Burbas "jumped on [Plaintiff's] back and began to choke Plaintiff with a chokehold that compressed Plaintiff's windpipe with such force that Plaintiff was unable to breathe."  Amended Complaint (Dkt. 12) at ¶ 20.  That conduct clearly serves as the basis of Plaintiff's assault and battery claims, and Defendant does not move for summary judgment on those claims.  *See* Defendant's Memorandum (Dkt. 98-23) at 1 n.1.  Plaintiff's negligence claims thus cannot continue to the extent those claims are predicated on the same underlying conduct as Plaintiff's assault and battery claims, as such claims are not recognized under New York law. *See Fernandez v. City of New York*, 457 F. Supp. 3d 364, 398 (S.D.N.Y. 2020) (granting summary judgment in favor of the defendants on the plaintiffs' negligence claims where those negligence claims were based on the same underlying conduct as the plaintiffs' intentional tort claims that survived summary judgment); *Ivery*, 284 F. Supp. 3d at 440-42 (same).

14

In opposition to Defendant's Motion, Plaintiff advances two arguments why Defendant is not entitled to summary judgment on Plaintiff's negligence claims. *See* Plaintiff's Brief (Dkt. 106-1) at 11-22. First, Plaintiff argues that Defendant's Motion erroneously attempts to strike Plaintiff's negligence claims under Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), which allows the court to strike an insufficient defense or impertinent matter. *See generally id.* at 11-15. Plaintiff asserts that the New York preclusion rules, *i.e.*, that an individual may not recover damages under a theory of negligence once intentional conduct has been established, upon which Defendant relies are procedural in nature and therefore do not apply to this FTCA action. *See id.* As a result, according to Plaintiff, Defendant cannot use Rule 12(f) to strike claims as redundant when those claims are being pled in the alternative. *See id.* This argument misses the mark because whether a cause of action exists is an issue of substantive law, not procedural law. *See Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021) ("By way of distinction, procedural law is the judicial process for enforcing rights and duties recognized by substantive law, while substantive law is the law that governs that rights and obligations of individuals within a given jurisdiction." (internal quotation marks and citation omitted)); *cf. Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that 42 U.S.C. § 1983 "itself creates no substantive rights[,] [because] it provides only a procedure for redress for the deprivation of rights established elsewhere."). Thus, the well-established principle in New York that an individual may not recover damages under a theory of negligence once intentional conduct has been established, *see, e.g.*, *Schetzen*, 709 N.Y.S.2d at 194, is state substantive law that applies to this FTCA action. *See Meyer*, 510 U.S. at 478; *Liranzo*, 690 F.3d at 86.

Second, Plaintiff argues that at least some of his negligence claims are based on different conduct than the assault and battery claims. *See* Plaintiff's Brief (Dkt. 106-1) at 16-22. More specifically, Plaintiff asserts that (1) his negligent breach of duty of care to Plaintiff as a confined person claim, as well as his negligent infliction of emotional distress claim, are based on the CBP officers' failure to provide medical treatment following the use of force incident, and (2) his negligent hiring, training, retention, and supervision claims are based on Officer Mowla's "misunderstanding" of Plaintiff's behavior. *See id.* Neither point is persuasive because under New York law, "[a] defendant stands liable in negligence only for a breach of duty of care owed to the plaintiff," *Sanchez v. New York*, 784 N.E.2d 675, 678 (N.Y. 2002), and Plaintiff fails to create a genuine issue of material fact whether the CBP officers negligently breached a duty of care owed to Plaintiff.

Specifically, to Plaintiff's negligent breach of duty of care and negligent infliction of emotional distress claims, Plaintiff admitted at his deposition that Officer Cruz-Vega (1) allowed Plaintiff to stand in the interview room because Plaintiff was experiencing shoulder pain while sitting down, and (2) obtained first aid supplies so that Plaintiff could clean himself up. *See* Defendant's Exh. S (Dkt. 113-2) at 4-5; *see also* Defendant's Statement of Facts (Dkt. 98-22) at ¶¶ 151-52; Plaintiff's Statement of Facts (Dkt. 106) at ¶¶ 151-52. Plaintiff further admitted that the CBP officers had ambulances transport Plaintiff and Plaintiff's son to a nearby hospital for treatment. *See* Defendant's Exh. S at 6-10. There is no other evidence in the record from which a rational trier of fact could conclude that the CBP officers breached a duty of care to Plaintiff following the use of force incident or that any such breach substantially caused Plaintiff's injuries. *See, e.g.*,

*Robinson v. U.S. Bureau of Prisons*, 244 F. Supp. 2d 57, 66 (N.D.N.Y. 2003) ("Plaintiff offers no evidence . . . that [the] defendants breached th[eir] duty of care [to those confined] or that, assuming they did breach their duty of care, [the decedent's] injuries and resulting death were substantially caused by that breach.").

As to Plaintiff's negligent hiring, training, retention, and supervision claims, Plaintiff makes no discernable argument regarding what duty of care Officer Mowla breached by "misreading" Plaintiff's behavior and sending Plaintiff to secondary inspection. *See* Plaintiff's Brief (Dkt. 106-1) at 20-22. In any event, however, Plaintiff cannot sustain negligent hiring, training, retention, and supervision claims against Defendant because those claims may succeed against an employer only where the negligent employee was acting outside the scope of the employee's employment. *See Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) ("To maintain a claim against a[n] . . . employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment." (internal quotation marks and citation omitted)); *Karoon v. N.Y.C. Transit Auth.*, 659 N.Y.S.2d 27, 29 (1st Dep't 1997) ("Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention."). Here, there is no dispute that the CBP officers were acting within the scope of those officers' employment. *See, e.g.*, Amended Complaint (Dkt. 12) at ¶ 2 (alleging that CBP officers were, "at all relevant times . . . acting within the scope of their office and/or employment within the meaning of the FTCA"). Plaintiff does not argue otherwise.

17

In sum, there is no evidence that the CBP officers breached a duty of care to Plaintiff, either before or after the use of force incident, or that such a breach, if it occurred, substantially contributed to Plaintiff's injuries.  *See Lombard*, 280 F.3d at 215; *Robinson*, 244 F. Supp. 2d at 66.  Further, Plaintiff cannot sustain negligent hiring, training, retention, and supervision claims against Defendant because the CBP officers were, at all relevant times, acting within the scope of those officers' employment.  *See Velez*, 730 F.3d at 136-37; *Karoon*, 659 N.Y.S.2d at 29.  Defendant is therefore entitled to summary judgment on all of Plaintiff's common law negligence claims.

**5.    Intentional Infliction of Emotional Distress**

Plaintiff also asserts a claim for common law intentional infliction of emotional distress.  *See* Amended Complaint (Dkt. 12) at ¶¶ 66-72.  Defendant argues that summary judgment is warranted because Plaintiff's intentional infliction of emotional distress claim, like Plaintiff's negligence claims, *see* Discussion, *supra*, pp. 13-18, is precluded by of Plaintiff's assault and battery claims.  *See* Defendant's Memorandum (Dkt. 98-23) at 12-13.  Defendant further argues that even if the intentional infliction of emotional distress claim is not precluded by the assault and battery claims, Plaintiff nevertheless fails to state a claim for intentional infliction of emotional distress under New York law.  *See id.* at 13-14.  Defendant is correct on both points.

"The tort [of intentional infliction of emotional distress] has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993).  "The first element—outrageous conduct—serves the dual

function of filtering out petty and trivial complaints that do not belong in court,

and . . . [i]n practice, courts have tended to focus on the outrageousness element,

[which is] the one most susceptible to determination as a matter of law." *Id.* "Liability

has been found only where the conduct has been so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded

as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation

marks and citation omitted). Accordingly, "the requirements . . . are rigorous and

difficult to satisfy[;] [i]ndeed, of the intentional infliction of emotional distress claims

considered by [the New York Court of Appeals], every one has failed because the

alleged conduct was not sufficiently outrageous." *Id.*; *accord Chanko v. Am. Broad.*

*Cos. Inc.*, 49 N.E.3d 1171, 1178 (N.Y. 2016). Plaintiff does not argue otherwise.

Here, Plaintiff alleges that the CBP officers "engaged in extreme and outrageous

conduct." *See* Amended Complaint (Dkt. 12) at ¶ 68. That allegation is insufficient to

plausibly allege an intentional infliction of emotional distress claim, let alone to allow

such a claim to survive summary judgment. *See Naughright v. Weiss*, 826 F. Supp. 2d

676, 697-98 (S.D.N.Y. 2011) (explaining that "extreme and outrageous conduct must be

clearly alleged . . . for the complaint to survive a motion to dismiss." (internal quotation

marks and citation omitted)); *Dillon v. City of New York*, 704 N.Y.S.2d 1, 7-8 (1st Dep't

1999). And, in any case, even if the CPB officers' intentional conduct was sufficiently

extreme and outrageous, that tortious conduct is covered by Plaintiff's assault and

battery claims. *See Warr v. Liberatore*, 270 F. Supp. 3d 637, 654 (W.D.N.Y. 2017)

("[I]ntentional infliction of emotional distress is generally unavailable where other

traditional tort remedies are available." (collecting cases)); *EEOC v. Die Fliedermaus*,

77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) ("Under New York law, 'intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort' and such a claim is therefore 'precluded where the offending conduct is embraced by a traditional tort remedy.'" (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 682 N.Y.S.2d 167, 169 (1st Dep't 1998))); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) ("[T]he New York Court of Appeals has questioned whether an intentional infliction claim can ever be brought where the challenged conduct falls well within the ambit of other traditional tort liability[;] [a]ll four Appellate Division courts have answered the question and held that it cannot." (internal quotation marks and citation omitted)). As such, Defendant is entitled to summary judgment on Plaintiff's common law intentional infliction of emotional distress claim. *See, e.g.*, *Leon v. United Indus. Corp.*, 2024 WL 3638008, at *4 (S.D.N.Y. Aug. 2, 2024) (granting "the defendants' motion for summary judgment dismissing the plaintiff's strict liability claim").

**6.    Excessive Force**

In addition to the assault and battery claims, Plaintiff asserts a claim for common law excessive force. *See* Amended Complaint (Dkt. 12) at ¶¶ 49-52. Defendant argues for summary judgment on that claim because there is no cause of action for excessive force against a private individual in New York. *See* Defendant's Memorandum (Dkt. 98-23) at 15-17.

To the extent New York recognizes excessive force claims at common law, such claims are analyzed under the Fourth Amendment's objective reasonableness standard. *See, e.g.*, *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d 583, 588 (2d Dep't 2011); *Li v. Aponte*, 2008 WL 4308127, at *9 (S.D.N.Y. Sept. 16, 2008). But the "Fourth

Amendment principles governing searches and seizures apply only to 'governmental action' and are thus 'wholly inapplicable to a search or seizure, even an unreasonable one effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any government official.'" *United States v. DiTomasso*, 932 F.3d 58, 67 (2d Cir. 2019) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  Accordingly, Plaintiff's excessive force claim does not meet the FTCA's private analogue requirement.  *See McGowan*, 825 F.3d at 126-27 (explaining that the FTCA's "private analogue inquiry asks whether 'private individuals may create a relationship with third parties that is similar to the relationship between' a governmental actor and citizen" (brackets and ellipses omitted) (quoting *United States v. Olson*, 546 U.S. 43, 47 (2005))); *see also James v. City of Rochester*, 673 F. Supp. 3d 279, 290-91 (W.D.N.Y. 2023) (dismissing "negligent planning" and "failure to intervene" claims brought under the FTCA because there was no indication that New York courts allowed such claims to proceed against private persons).  Defendant therefore is entitled to summary judgment on Plaintiff's common law excessive force claim.  *See Leon*, 2024 WL 3638008, at *4.

### 7.  Plaintiff's Cross-Motion

Plaintiff filed a motion "for an order . . . pursuant to Fed. R. Civ. P. 56, directing that, if the Court pretrial precludes any of Plaintiff's claims per New York law, then [Defendant] is judicially estopped from denying liability for the claims used as a predicate to preclude."  Plaintiff's Cross-Motion (Dkt. 107) at 1.  Stated differently, Plaintiff asks that Defendant be precluded from arguing at trial that harmful or offensive contact underlying Plaintiff's assault and battery claims was accidental.  *See id.* Plaintiff's Cross-Motion should be denied.

"The equitable doctrine of judicial estoppel provides that, 'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (alteration adopted) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The Second Circuit "limit[s] the application of judicial estoppel to situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Id.* at 148. The Second Circuit also "limits the doctrine of judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997).

As relevant here, "the doctrine of equitable estoppel cannot be applied against the United States, 'except in the most serious of circumstances.'" *Grace v. United States*, 754 F. Supp. 2d 585, 598 (W.D.N.Y. 2010) (quoting *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982)). More specifically, "[e]quitable estoppel cannot be used against the government unless there has been a showing of affirmative misconduct by the government." *Gildor v. U.S. Postal Serv.*, 179 F. App'x 756, 760 (2d Cir. 2006) (citing *Rojas-Reyes v. INS*, 235 F.3d 1155, 126 (2d Cir. 2000); *City of New York v. Shalala*, 34 F.3d 1161, 1168 (2d Cir. 1994)). There are no allegations of affirmative misconduct by Defendant in this case. As such Plaintiff's Cross-Motion should be denied.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's Motion (Dkt. 98) should be GRANTED;

Plaintiff's Cross-Motion (Dkt. 107) should be DENIED, and the case should be

scheduled for trial.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    May 13, 2025
Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     May 13, 2025
           Buffalo, New York